UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Docket No. |
| v. | ) CR-20-0220 (JMA) |
| | ) |
| THOMAS BLAHA, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| MEMORY PROTECTION DEVICES, INC. | ) |
| | ) |
| Garnishee. | ) |

## ANSWER OF THE GARNISHEE

Charles B. Engelstein, being duly sworn, deposes and says:

1. I am the president of Memory Protection Devices Inc. (the "Garnishee"), which has its principal office at 200 Broad Hollow Road, Farmingdale, NY 11735. The Garnishee is a corporation organized under the laws of the State of New York.

2. On August 17, 2023 the Garnishee was served with the Writ of Continuing Garnishment.

3. The Debtor-Defendant is not owed any wages or other compensation by the Garnishee.

4. The Garnishee has in its custody or control the following non-earning property in which the Debtor-Defendant maintains an interest: Sixty-six and 2/3 shares (66 2/3) of the common stock of the Garnishee representing 33 1/3% of all outstanding shares (the "Shares"). The Debtor-Defendant has a contractual obligation to sell the Shares

to me for the sum of $400,000. I have been ready and willing to purchase the Shares for the agreed upon $400,000 for over a year. The facts and circumstances regarding the Debtor-Defendant's employment by the Garnishee, ownership of the Shares and his obligation to sell those Shares are summarized below.

5. The Debtor-Defendant and the Garnishee entered into an employment agreement dated May 1, 2007 ("Employment Agreement") pursuant to which the Debtor-Defendant was employed as President of the Garnishee. The Debtor-Defendant purchased the Shares from another shareholder of the Garnishee in connection with his employment. The Debtor-Defendant agreed at the time of purchase that the Shares would be held subject to the terms and conditions of the Memory Protection Devices, Inc. Shareholders Agreement dated July 18, 1996 as same shall be modified or amended from time to time (the "Shareholders Agreement").

6. The Employment Agreement provides at Section 5 for grounds to terminate the Debtor-Defendant's employment for "cause". Specifically the Employment Agreement provides: "If the Employee (i<u>) is convicted</u> <u>of a felony</u>…the Garnishee may terminate the Employee's employment immediately, by written notice to the Employee." (emphasis added). The Employment Agreement further provides at Section 7 that in the event the Debtor-Defendant's employment with the Garnishee should be terminated due to cause, the shareholders of the Garnishee, other than the Employee, would have the option to purchase the Shares for the lesser of $400,000 (representing the sum paid by the Debtor-Defendant for his shares of the Garnishee's stock on August 21, 2006) or the fair market value of the Shares (the "Option").

7. The Employment Agreement provides that the shareholders of the Garnishee may exercise the Option by giving notice to the Debtor-Defendant within thirty (30) days from the date of termination of employment. The Employment Agreement provides at Section 8.2 that the closing of the purchase of the Shares "shall take place <u>no more than thirty (30) days</u> after the Employee [Debtor-Defendant] has received notification that his Shares will be purchased by the Shareholder" (emphasis added).

8. As the Court docket will show, on February 20th, 2020 the Debtor-Defendant was arrested on a criminal complaint and arraigned before the US District Court. Debtor-Defendant was required to post a $1 million bond and offered as collateral, among other assets, the Shares, despite the fact that he had agreed, as part of the Shareholders Agreement, that he would not transfer, hypothecate, pledge or encumber the Shares. On June 18th, 2020 Debtor-Defendant was indicted (the "Indictment).

9. Despite the fact that Debtor-Defendant was the president of the Garnishee, Debtor-Defendant did not inform the directors or shareholders of the Garnishee or any of its employees of either his arrest or indictment. Debtor-Defendant was able to conceal these events from the Garnishee because of the various quarantine restrictions imposed upon employers generally during the Covid epidemic. It was not until on about July 15, 2021, more than one year after the arrest and indictment, that the Garnishee learned, through third party sources, that the Debtor-Defendant was the subject of the Indictment.

10. Upon learning of the Indictment the Garnishee contacted the Debtor-Defendant to arrange for the orderly transfer of his responsibilities as president. Following those discussions the Garnishee and Debtor-Defendant entered into a letter agreement, dated as of July 15, 2021, in which the Employment Agreement was amended to provide, among other things, that the Debtor-Defendant would resign as an officer and director of the Garnishee, would be paid salary and receive benefits for a stated period of time, and further provided "[i]n the event that you [Debtor-Defendant] are convicted or accept a plea agreement with respect to the matters set forth in the Indictment, you [Debtor-Defendant] agree that the Garnishee has grounds to terminate your employment for Cause under the Employment Agreement."

11. On April 20, 2022, upon learning that the Debtor-Defendant pled guilty to a felony with respect to the Indictment, the Garnishee terminated the Debtor-Defendant's employment and provided written notice of termination to the Debtor-Defendant. I, as one of the shareholders of the Garnishee, exercised the Option to purchase the Shares by providing written notice to the Debtor-Defendant within thirty days of notice of

termination of employment of the Debtor-Defendant. I stated in my letter my intention to purchase my pro-rata portion (50%) of the Shares, and that if the other shareholder of the Garnishee did not exercise his option to purchase his pro-rata portion of the Shares, I would purchase all of the Shares held by the Debtor-Defendant. The Debtor-Defendant was also informed that given the Option arose from the Debtor-Defendant's termination for "cause", the purchase price for all of the Shares was set at $400,000. Mr. David Kassel, the other shareholder of the Garnishee, did not exercise his option to purchase any of the Shares during the 30-day period. I informed the Debtor-Defendant that I was ready to proceed with completion of the purchase of all of the Shares.

12. Pursuant to the terms of the Employment Agreement the closing of the purchase of the Shares was required to be completed within 30 days of notice of exercise of the Option which would have been May 21, 2022. Despite repeated efforts by me to complete the purchase of the Shares pursuant to the exercised Option, the Debtor-Defendant has failed or refused to complete the sale.

13. My efforts to complete the purchase of the Shares have been constant since May, 2022. On May 15, 2022, the Debtor-Defendant, by email advised that the Debtor-Defendant was being represented in the Share sale by John Murtagh, Esq. In June, 2022, the Garnishee was advised by its bank that it would require a directors' resolution confirming the resignation of the Debtor-Defendant and a letter of resignation in order to remove the Debtor-Defendant as a signatory to the Garnishee's bank account. Mr. Murtagh was contacted on behalf of the Debtor-Defendant and he provided a signed copy of a consent of directors dated June 14, 2022, signed by the Debtor-Defendant approving the amendment to the Employment Agreement, *nunc pro tunc*, accepting the Debtor-Defendant's resignation as president and director of the Garnishee and electing Engelstein as president and secretary of the Garnishee. He also provided a letter of resignation signed by the Debtor-Defendant, dated June 14, 2022, confirming the Debtor-Defendant's resignation as president and director of the Garnishee as of July 15, 2021.

-4-

14. The Debtor-Defendant has consistently acknowledged his obligation to sell the Shares to me. For example, Mr. Murtagh, by letter dated June 15, 2022, questioned whether the $400,000 purchase price for the Shares was proper. The letter did not make any claim, nor could it, that the Debtor-Defendant was not obligated to sell the Shares.

15. Following that letter, there were discussions between counsel for the Debtor-Defendant and counsel for the purchaser regarding the completion of the purchase of the Shares. On October 18th, 2022, a draft Stock Purchase Agreement, was sent to Mr. Murtagh by email. Mr. Murtagh advised that he would review the draft with the Debtor-Defendant and respond. Mr. Murtagh advised that he required the Stock Purchase Agreement be modified to provide that the contract would be signed currently but closing would occur upon release of the Shares by the Justice Department, and to provide for indemnification in favor of the Debtor-Defendant from certain possible claims. In response, a revised Stock Purchase Agreement was sent to Mr. Murtagh on November 29, 2022. On December 19, 2022, I received a Restraining Notice with regard to a judgment in favor of the United States of America against Debtor-Defendant in the amount of $963,877.

16. During January 2023 and following sentencing Debtor-Defendant surrendered for incarceration. I directed my attorneys to make follow up attempts with the Debtor-Defendant's counsel regarding the purchase of the Shares. I also instructed my counsel to make direct contact with the United States Attorney regarding the purchase of the Shares so that the purchase would be conducted in accordance with the Restraining Notice.

17. During February and March there were communications with attorneys for the Debtor-Defendant but no progress was made to complete the purchase of the Shares.

18. On March 17, 2023, Scott Blaha, the Debtor-Defendant's son, advised an employee of the Garnishee that Scott had the Debtor-Defendant's power of attorney, and that any documents should be sent to him. From March through to the current date I have through our attorneys made repeated efforts to complete the purchase of the Shares including reaching out regularly to USA Saavedra and Debtor-Defendant's counsel,

31089358v.2

Mr. Murtagh. Despite these repeated efforts the Debtor-Defendant has repeatedly delayed and disregarded every attempt to complete the sale of the Shares and receive payment.

19. I am ready and willing to pay cash consideration to the Court in the amount of $400,000 to complete the purchase of the Shares. While the terms of the contract would permit me to pay for the Shares partly in cash and partly in installments under a promissory note, I am prepared to pay the entire purchase price of $400,000 in cash to facilitate the transaction.

20. It is now over fifteen months since the date when the closing of the purchase and sale of the Shares was contractually obligated to occur. Without the voluntary cooperation of the Debtor-Defendant, I am unable to pay for the Shares to the Clerk of the Court. The Debtor-Defendant continues to deprive his victims of due restitution. As such, we respectfully submit that it would be appropriate for the Court to order the sale of the Shares to me in exchange for payment of $400,000 to the Clerk of the Court.

Charles Engelstein
President
Memory Protection Devices Inc.

State of New York )
County of Suffolk ) ss:

Sworn to before me this

22 day of August, 2023

Notary Public

Annette N. Reeve
Notary Public
01RE6242708
Valid in Suffolk County, NY
Expiration June 6, 20_27

TO:

Daniel Saavedra
Assistant U.S. Attorney
Unites States Attorney's Office

31089358v.2

Kevin Faga
Attorney for Thomas Blaha
Faga Hladki, LLP
1133 Westchester Avenue
Suite N-202
White Plains, New York 10604

Thomas Blaha, 92291-053
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Join Base MDL, NJ 08640

The Estate of David Kassel
c/o Lauren Nakachi
McCarter & English
100 Mulberry Street
Newark, NJ 07102